**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RODERICK D. HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 12-1021 |
| v. | ) | |
| | ) | Judge David S. Cercone |
| CAROLYN W. COLVIN, | ) | Magistrate Judge Lisa Pupo Lenihan |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I. RECOMMENDATION

It is respectfully recommended that the Court grant Plaintiff's Motion for Summary Judgment to the extent it requests remand and deny to the extent it requests that judgment be entered in favor of Plaintiff, and deny Defendant's Motion for Summary Judgment.

## II. REPORT

### A. BACKGROUND

#### 1. Procedural

Roderick D. Hill ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 – 433 ("Act"). Plaintiff filed for benefits

claiming an inability to work due to disability beginning January 25, 2009. (R. at 82 – 83).[1] At the time of his application for benefits, Plaintiff's allegedly disabling impairments included diabetes and hypertension. (R. at 107). Despite his claims, Plaintiff was denied benefits under the Act. (R. at 1 – 4, 6 – 20, 41 – 44). Having exhausted all administrative remedies, this matter now comes before the Court on cross motions for summary judgment. (ECF Nos. 13, 16).

**2. General**

Plaintiff was born on January 20, 1958, was fifty two years of age at the time of his application for benefits, and was fifty three years of age at the time of his administrative hearing. (R. at 103). Plaintiff completed the eleventh grade, but did not graduate high school. (R. at 24). However, he earned a GED, and subsequently completed training to become a truck driver. (R. at 108). Plaintiff lives in a two-story home with his girlfriend and pet dog. (R. at 27 – 28). His past work experience included employment as a forklift operator, grinder, roofer, home remodeler, and truck driver. (R. at 109, 119). Since he stopped working, Plaintiff spent most days watching television. (R. at 93). He managed some household chores and cooking. (R. at 93). He occasionally went fishing and boating, played football, and rode a motorcycle. (R. at 98).

**3. Treatment History**

On June 29, 2009, Plaintiff was admitted to UPMC Presbyterian Shadyside Hospital in Pittsburgh, Pennsylvania for complaints of right-sided low back pain and stiffness. (R. at 139). He was treated by Abdul Khan, M.D. (R. at 139). Plaintiff was diagnosed with left-sided pneumonia and possible left lung mass. (R. at 139). Plaintiff was also noted to have chronic pancreatitis. (R. at 139). Plaintiff responded well to medication and was discharged on July 2, 2009 in stable condition. (R. at 139). His blood work was unremarkable, although his glucose

---

[1]      Citations to ECF Nos. 7 – 7-10, the Record, *hereinafter*, "R. at __."

level had been elevated. (R. at 139, 190). He was advised to follow up for pulmonary and gastrointestinal work-ups. (R. at 139). While at the hospital, an MRI of Plaintiff's lumbar spine was ordered, and it revealed the presence of congenital narrowing of the spinal canal with degenerative change most prominent at the L5 − S1 level. (R. at 191). The abnormality was characterized as mild. (R. at 191).

On August 12, 2009, Plaintiff had a follow-up examination with Dr. Khan at his practice. (R. at 197). Plaintiff was observed to be in no acute distress. (R. at 197). Plaintiff's blood pressure was elevated, but he had not been taking the medication prescribed for this condition. (R. at 197). Examination of Plaintiff's chest, heart, lungs, and abdomen was normal, as was an examination of his extremities. (R. at 197). Plaintiff's spine had a normal range of motion and exhibited no tenderness. (R. at 197). Plaintiff had full strength, a normal gait, and normal sensation. (R. at 197).

Plaintiff was again admitted to UPMC Presbyterian Shadyside Hospital on January 22, 2010. (R. at 200 − 01). Plaintiff complained of generalized weakness, fatigue, inability to complete daily tasks, and increased thirst for approximately one week. (R. at 200). Plaintiff's blood sugar level was greater than 400, and he was suffering from diabetic ketoacidosis. (R. at 200). Plaintiff's blood pressure was stable. (R. at 200). His blood sugar level was initially difficult to control, and remained somewhat elevated at the time of his discharge − between 258 and 291. (R. at 200). Plaintiff was prescribed several medications for diabetes, and was educated about checking his blood sugar, administering insulin, and maintaining a specific diet. (R. at 200, 207). He was to follow up with Dr. Khan for close monitoring. (R. at 200).

Plaintiff followed up with endocrinologist Vijay K. Bahl, M.D. on February 8, 2010. (R. at 220 − 21). Plaintiff had a normal physical examination, including normal gait, full strength in

his extremities, and no foot ulcers.  (R. at 221).  Plaintiff did not have retinopathy or blurry vision.  (R. at 217).  His noted diagnoses were type II diabetes and hypertension.  (R. at 220).  An examination on May 10, 2010 was largely the same.  (R. at 218 – 19).  Plaintiff's HbA1c level on that date was found to be 5.9[2].  (R. at 222).  His level in April 2010 had been 5.8.  (R. at 230).

Plaintiff returned to see Dr. Bahl on September 13, 2010.  (R. at 259 – 60).  His HbA1c was at 5.9.  (R. at 260).  His glucose level was at 190[3].  (R. at 260).  As before, Plaintiff had a normal physical examination.  (R. at 260).  At an appointment on January 3, 2011, Plaintiff's HbA1c was at 6.1.  (R. at 257 – 58).  His glucose level was at 189, and his physical examination was normal.  (R. at 257 – 58).  In May 2011, Dr. Bahl again noted normal physical examination results.  (R. at 255 – 56).  Plaintiff's HbA1c was at 7.8.  (R. at 256).

On June 17, 2011, Plaintiff underwent a left shoulder arthroscopy, subacromial decompression, and distal clavicle excision while under the care of Yram Groff, M.D.  (R. at 266).  Prior attempts to alleviate significant arm pain with injections provided limited relief.  (R. at 300 – 04).  Following the surgery, Plaintiff was noted to be doing "remarkably well."  (R. at 299).  Plaintiff experienced minimal discomfort and was not taking any pain medication.  (R. at 299).  He exhibited a good range of motion in his left shoulder.  (R. at 299).  Plaintiff's strength was normal.  (R. at 299).  Plaintiff was to engage in home exercise and physical therapy.  (R. at 299).  Dr. Groff felt Plaintiff's surgery had gone very well.  (R. at 299).

### 4. Functional Capacity Evaluations

---

[2]     HbA1c levels of less than 6.0 indicate good control of blood sugar levels, between 6.0 and 8.0 indicate fair control, and greater than 8.0 indicate poor control.  (R. at 230).
[3]     Plaintiff was instructed to contact his physician for blood glucose levels above 350 or below 70.  (R. at 211).  Blood glucose levels at 240 for three days in a row also required medical attention.  (R. at 211).  Plaintiff stated that his glucose levels generally averaged between 180 and 200.  (R. at 280).

A Physical Residual Functional Capacity Assessment ("RFC") of Plaintiff was completed by state agency evaluator Michael J. Niemiec, D.O. on June 29, 2010.  (R. at 233 – 39).  Based upon his review of the medical record, Dr. Niemiec concluded that the evidence supported finding impairment in the way of hypertension, diabetes, mild lumbar spinal stenosis, and chronic pancreatitis.  (R. at 233).  As a result, Dr. Niemiec determined that Plaintiff would be limited to occasionally lifting and carrying twenty pounds, frequently lifting and carrying ten pounds, standing and walking about six hours of an eight hour work day, and sitting about six hours.  (R. at 234).  Plaintiff was not otherwise limited.  Dr. Niemiec cited to generally successful treatment and control of his impairments in the record.  (R. at 238).  Plaintiff was generally capable of independent self-care and care of his home.  (R. at 238).  Plaintiff's subjective complaints of greater limitation than found were considered to be less than credible.  (R. at 238).

On November 4, 2010, Dr. Bahl completed a Medical Statement Regarding Pain and a Medical Statement Regarding Diabetes for Social Security Disability Claim.  (R. at 261 – 62).  Plaintiff was noted to have type II diabetes and left shoulder tendonitis.  (R. at 261 – 62).  The pain in the left shoulder was indicated as being "severe."  (R. at 261).  Plaintiff also had decreased energy due to irregular glucose levels.  (R. at 261).  Dr. Bahl felt that Plaintiff would have a "hard time working," but did not indicate on his forms whether Plaintiff had limitations in activities of daily living, social functioning, or concentration, persistence, or pace.  (R. at 261).  He did opine that Plaintiff could stand only thirty minutes at a time, sit only thirty minutes, lift no more than ten pounds with any frequency, and only occasionally balance.  (R. at 262).  Ultimately, it was Dr. Bahl's opinion that Plaintiff would not be able to work.  (R. at 262).

On January 6, 2012, Richard A. Rydze, M.D. completed a Disability Evaluation of Plaintiff on behalf of the Bureau of Disability Determination. (R. at 305 – 14). Dr. Rydze recorded Plaintiff's complaints of poor control of his diabetes, numbness and burning in his feet, and frequent blurred vision. (R. at 305 – 06). Plaintiff claimed to become short of breath when walking one-and-one-half to two blocks. (R. at 307).

Upon examination, Dr. Rydze observed Plaintiff's gait and station to be normal. (R. at 308). Tenderness over the cervical and lumbar spine was found. (R. at 308). There was slight reduction in range of motion in the left shoulder and some mild impingement. (R. at 308). However, there was no joint swelling or muscle atrophy. (R. at 309). There were no motor or sensory abnormalities, and reflexes and coordination were normal. (R. at 309). Dr. Rydze diagnosed Plaintiff with poorly controlled diabetes, hypertension, visual problems, cervical arthritis and left shoulder impingement, and mild cardiopulmonary disease as a likely result of long-term smoking. (R. at 309).

Due to the nature of Plaintiff's impairments, Dr. Rydze opined that he would be functionally limited to occasionally lifting twenty pounds, frequently lifting ten pounds, and only occasionally climbing, kneeling, crouching, stooping, balancing, and crawling. (R. at 311 – 12). Plaintiff had no limitations with respect to sitting, standing, seeing, feeling, handling, reaching, hearing, or pushing/pulling. (R. at 312 – 13). Plaintiff would need to avoid fumes, heights, humidity, and temperature extremes. (R. at 313).

### 5. Administrative Hearing Testimony

Plaintiff testified that he last worked as a truck driver in 2009, but that he quit because of pain in his arm and shoulder. (R. at 25). Plaintiff explained that he subsequently underwent surgery on his shoulder, and engaged in physical therapy and home exercise. (R. at 25). He

claimed to experience arm pain one or twice a week. (R. at 30). Plaintiff stated that his doctors limited his lifting and carrying to no more than ten pounds. (R. at 33).

Plaintiff stated that he was only just beginning to keep his blood sugar levels under consistent control. (R. at 26). He measured his blood sugar levels three times per day, and tried to keep the level under 200. (R. at 27). He noted that he experienced difficulty because he did not faithfully maintain the strict dietary requirements prescribed by his doctors. (R. at 26 – 27). However, he had not been hospitalized for diabetes-related issues since his diagnosis. (R. at 35). Plaintiff believed that his diabetes was causing him to experience pain, numbness, and swelling in his legs and feet. (R. at 31 – 32). If he stood too quickly, he would become lightheaded and dizzy. (R. at 32, 34). He claimed to be able to stand no more than twenty or thirty minutes at a time. (R. at 32). Plaintiff could sit for a half hour, but would have to get up and move to keep his legs from becoming stiff. (R. at 32). He could walk about two blocks at a time. (R. at 33).

Plaintiff stated that he spent a typical day watching television. (R. at 28). He would take his dog for walks, perform limited chores around the house, and maintain his yard. (R. at 28 – 29). Plaintiff enjoyed playing video games (R. at 28). Plaintiff testified that his girlfriend would become frustrated with him for being a "little lazy." (R. at 28). Plaintiff kept irregular hours as a result of his former truck-driving schedule. (R. at 31). He slept only four or five hours per day. (R. at 31). Plaintiff was capable of shopping independently, but made short trips to avoid prolonged walking and standing. (R. at 33). He prepared simple meals. (R. at 33 – 34). Plaintiff fished and played football and volleyball, but he limited the extent of these activities because of the frequency with which he had to check his blood sugar levels. (R. at 34).

Following Plaintiff's testimony, the ALJ asked the vocational expert present at the hearing whether a hypothetical person of Plaintiff's age, educational level, and work background

would be capable of obtaining work existing in significant numbers in the national economy if limited to lifting and carrying no more than twenty pounds occasionally with the right hand or ten pounds with the left hand, but otherwise capable of performing work at the light exertional level.  (R. at 37).  The vocational expert replied that such a person would be capable of working as a "furnisher, rental consultant," with 400,000 positions available in the national economy, as an "account investigator," with 280,000 positions available, or as a "school bus monitor," with over 110,000 positions available.  (R. at 37).

Plaintiff's attorney then asked the vocational expert whether any work would be available to an individual if expected to be off-task at least thirty percent of any given workday due to the need to take rest breaks and the inability to concentrate.  (R. at 37).  The vocational expert responded that no jobs would be available to such a person.  (R. at 38).

**B.**  **ANALYSIS**

### 1. Standard of Review

To be eligible for social security benefits under the Act, a claimant must demonstrate to the Commissioner that he or she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F. 2d 581, 583 (3d Cir. 1986).  When reviewing a claim, the Commissioner must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability.  20 C.F.R. §§ 404.1520, 416.920.

The Commissioner must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's

impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App'x 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24 – 25 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F. 2d 26, 28 (3d Cir. 1986).

Judicial review of the Commissioner's final decisions on disability claims is provided by statute, and is plenary as to all legal issues. 42 U.S.C. §§ 405(g)[4], 1383(c)(3)[5]; *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 431 (3d Cir. 1999). Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based; the court will review the record as a whole. *See* 5 U.S.C. §706. The district court must then determine whether substantial evidence existed in the record to support the Commissioner's findings of fact. *Burns v. Barnhart,* 312 F. 3d 113, 118 (3d Cir. 2002).

---

[4]     Section 405(g) provides in pertinent part:

> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business

42 U.S.C. § 405(g).

[5]     Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Ventura v. Shalala*, 55 F. 3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). If the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson,* 402 U.S. at 390. When considering a case, a district court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh the evidence of record; the court can only judge the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196 – 97 (1947). The court will not affirm a determination by substituting what it considers to be a proper basis. *Chenery*, 332 U.S. at 196 – 97. Further, "even where this court acting *de novo* might have reached a different conclusion . . . so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings." *Monsour Medical Center v. Heckler*, 806 F. 2d 1185, 1190 – 91 (3d. Cir. 1986).

**2. Discussion**

In his decision, the ALJ found that Plaintiff experienced medically determinable severe impairment in the way of insulin-dependent diabetes mellitus, obesity, and left shoulder impingement syndrome, status post arthroscopic surgery. (R. at 11). As a result, the ALJ determined that Plaintiff would be capable of only light exertional work not involving exposure to fumes, excessive humidity, temperature extremes, or heights. (R. at 13). Based upon the testimony of the vocation expert, the ALJ concluded that even with such limitations, Plaintiff

would be eligible for a significant number of jobs in the national economy. (R. at 15 − 16). Plaintiff was therefore found not to be entitled to disability benefits. (R. at 16).

Plaintiff objects to the decision of the ALJ, arguing that he committed error in failing to incorporate all of Dr. Rydze's limitations findings into his hypothetical question and RFC, and in failing to fully credit Dr. Bahl's disability analysis. (ECF No. 14 at 7 − 13). Defendant counters that the ALJ supported his decision with substantial evidence from the record and should be affirmed by this Court. (ECF No. 17 at 9 − 19). The Court agrees with Plaintiff, in part.

The Court will begin by addressing the disability determination by Dr. Bahl. Plaintiff argues that in addition to Dr. Bahl's belief that Plaintiff could not work, his indication that Plaintiff would have a "hard time working," his notation that Plaintiff's diabetes was poorly controlled, and his functional limitations regarding standing, sitting, and lifting, should have been given greater weight due to objective support from the record. (ECF No. 14 at 12 − 13). Dr. Bahl's treatment history with Plaintiff notwithstanding, the Court finds that the ALJ did not improperly deny Dr. Bahl's opinion greater weight.

A treating physician's opinions may be entitled to great weight − considered conclusive unless directly contradicted by evidence in a claimant's medical record − particularly where the physician's findings are based upon "continuing observation of the patient's condition over a prolonged period of time." *Brownawell v. Comm'r of Soc. Sec.*, 554 F. 3d 352, 355 (3d Cir. 2008) (quoting *Morales v. Apfel*, 225 F. 3d 310, 317 (3d Cir. 2000)); *Plummer v. Apfel*, 186 F. 3d 422, 429 (3d Cir. 1999) (citing *Rocco v. Heckler* 826 F. 2d 1348, 1350 (3d Cir. 1987)). However, "the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Chandler v. Comm'r of Soc. Sec.*, 667 F. 3d 356, 361 (quoting *Brown v. Astrue*, 649 F. 3d 193, 197 n. 2 (3d Cir. 2011)). A showing of contradictory evidence and an accompanying

explanation will allow an ALJ to reject a treating physician's opinion outright, or accord it less weight. *Brownawell*, 554 F. 3d at 355. Moreover, the determination of disabled status for purposes of receiving benefits – a decision reserved for the Commissioner, only – will not be affected by a medical source simply because it states that a claimant is disabled or unable to work. 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2).

As was noted by the ALJ in his discussion, contrary to Dr. Bahl's assertion of lack of control, Plaintiff's HbA1c levels were generally in the range of good-to-fair control. (R. at 12 – 14). In both the medical record and during the administrative hearing, Plaintiff indicated that he generally maintained his blood glucose levels below 200. (R. at 12 – 14). Plaintiff had no diabetes-related episodes requiring hospitalization following his diagnosis. (R. at 12 – 14). As to Dr. Bahl's findings with respect to Plaintiff's ability to stand, walk, and sit, these were not supported by the objective medical record, or his own treatment notes, and Dr. Bahl provided no basis for his findings. (R. at 12 – 14). A medical opinion is not entitled to any weight if unsupported by objective evidence in the medical record. *Plummer*, 186 F. 3d at 430 (citing *Jones v. Sullivan*, 954 F. 2d 125, 129 (3d Cir. 1991)). The ALJ's treatment of Dr. Bahl's opinion was supported by substantial evidence.

The ALJ's treatment of Dr. Rydze's opinion is a different matter, however. Plaintiff argues that the ALJ did not properly accommodate Dr. Rydze's postural limitations findings or his environmental limitations findings. (ECF No. 14 at 7 – 11). In his decision, the ALJ summarized Dr. Rydze's opinion as endorsing Plaintiff's ability to manage all of the postural limitations associated with work. (R. at 14). This is not entirely correct. Dr. Rydze found that Plaintiff was limited to only occasionally climbing, kneeling, crouching, stooping, balancing, and crawling. (R. at 311 – 12). Further, while he acknowledges Dr. Rydze's finding of

environmental limitations and incorporates said limitations into his RFC assessment, the ALJ summarily concludes – without providing a shred of evidence for confirmation – that the occupations mentioned by the vocational expert at the administrative hearing would accommodate these environmental restrictions despite never having been posed to the vocational expert in hypothetical form. (R. at 13 – 15). An ALJ "must accurately convey to the vocational expert all of a claimant's *credibly established limitations*." *Rutherford v. Barnhart*, 399 F. 3d 546, 554 (3d Cir. 2005). "Limitations that are medically supported and otherwise uncontroverted in the record, but that are not included in the hypothetical question posed to the expert, preclude reliance on the expert's response." *Id.*

Given that the ALJ found Dr. Rydze's environmental limitations findings significant enough to include in his RFC, his failure to explain the basis for his conclusion that such limitations were properly accounted for by the vocational expert's responses denies the Court the ability to review the factual basis that must substantiate his disability finding. "Courts cannot exercise their duty of review unless they are advised of the considerations underlying the action under review." *Cotter v. Harris*, 642 F.2d 700, 705 n. 7 (3d Cir. 1981) (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943)). To conclude that the ALJ's decision with respect to his discussion of Dr. Rydze was supported by substantial evidence "approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" *Stewart v. Sec'y of Health, Educ. and Welfare*, 714 F. 2d 287, 290 (3d Cir. 1983) (quoting *Arnold v. Sec'y of Health, Educ. and Welfare*, 567 F. 2d 258, 259 (4th Cir. 1977)). The Court cannot here hold that the ALJ's conclusions with respect to Dr. Rydze's findings were supported by substantial evidence in light of the ALJ's inaccurate and cursory discussion of said

findings.  A more thorough review of Dr. Rydze's findings must be undertaken upon remand, and additional testimony should be elicited from the vocational expert, if necessary.

**C.    CONCLUSION**

The Court finds that the ALJ provided ample justification for his treatment of Dr. Bahl's conclusions regarding Plaintiff's ability to work, but not Dr. Rydze's findings.  Based upon the foregoing, the Court respectfully recommends that Defendant's Motion for Summary Judgment be denied; Plaintiff's Motion for Summary Judgment be denied to the extent it requests that judgment be entered in favor of Plaintiff; and Plaintiff's Motion for Summary Judgment be granted to the extent it requests remand and that the decision of the ALJ be vacated and remanded for further consideration consistent with this opinion.

"On remand, the ALJ shall fully develop the record and explain [his or her] findings… to ensure that the parties have an opportunity to be heard on the remanded issues and prevent *post hoc* rationalization" by the ALJ.  *Thomas v. Comm'r of Soc. Sec.*, 625 F. 3d 798, 800 – 01 (3d Cir. 2010).  *See also Ambrosini v. Astrue*, 727 F. Supp. 2d 414, 432 (W.D. Pa. 2010).  Testimony need not be taken, but the parties should be permitted input via submissions to the ALJ.  *Id.* at 801 n. 2.

In accordance with the Magistrate Judges Act, 28 U.S.C.  636(b)(1)(B) and (C), and Rule 72.D.2  of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections.  Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Lisa Pupo Lenihan
United States Magistrate Judge

Dated: July 26, 2013
cc/ecf: All counsel of record.